UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ALBERT REGINALD ROBINSON,

        Plaintiff,

v.

JESSICA KNACK et al.,

        Defendants.

_____/

Case No. 2:18-cv-9

Honorable Gordon J. Quist

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants O'Brien, Maki, Anderson, MacLaren, Peller, Ball, Lamb, Corizon, and Unknown Party JM. The Court will also dismiss Plaintiff's due process claims regarding his misconduct tickets. The Court will serve the complaint against Defendants Knack, Stallman, McDowell, Moran, Eicher, and Weist.

**Discussion**

I. **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility and the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Nurse Jessica Knack, Dr. Timothy Stallman, Hearing Officer Unknown O'Brien, Corrections Officer Unknown McDowell, Corrections Officer Unknown Moran, Corrections Officer Unknown Maki, Grievance Coordinator C. Anderson, Warden Duncan MacLaren, Administrative Assistant D. Peller, Nurse Dawn Eicher, Nurse Supervisor Wendy Ball, Healthcare Coordinator Patricia Lamb, Nurse Practitioner Tara Weist, Corizon, and Unknown Party named as "JM" in the mailroom.

Plaintiff alleges that on November 6, 2016, he asked Defendant Weist to be treated for sores on his private area. On November 7 or 8, 2016, Defendant Weist told Plaintiff that Weist's request for testing had been denied because the policy did not approve of venereal disease tests. Plaintiff states that he had previously shown his scabs to Defendant Weist, but that because his kites were never addressed in a timely manner, he could never get to health care before the bumps opened, bled, and turned into scabs. Defendant Weist told Plaintiff that she could not provide treatment without seeing the bumps. Plaintiff claims that Defendant Weist could have used Plaintiff's electronic medical record, which documents the different stages of his bumps since 2012, but Weist refused in retaliation for Plaintiff's grievances. Plaintiff claims that the denial of treatment for this condition has caused pain, scarring, and numbness in Plaintiff's private area.

Plaintiff alleges that on March 24, 2017, he missed a 9:15 a.m. health care appointment to pick up his glasses because he had been kept awake the previous night by a

2

toothache.  Plaintiff had a dental appointment at 9:45 a.m. on the same day and had the dental assistant ask Defendant Knack if he could pick up his glasses, but Defendant Knack refused, stating that Plaintiff would have to be rescheduled for a new appointment.  Plaintiff received a misconduct for missing the appointment.  Plaintiff claims that the misconduct was actually written in retaliation for filing grievances and a lawsuit on healthcare workers.  Plaintiff filed a grievance, which was rejected because it related to a misconduct.  Plaintiff asserts that in the past, Defendant Knack has asked the attending officer to call the unit when white inmates were late for, or missed, their appointments.  Plaintiff rescheduled his appointment for March 27, 2017, on which day he received his glasses.

On March 31, 2017, Plaintiff had a nurse appointment for an infection in his right ear and was given an appointment to see the doctor.  Plaintiff forgot to ask the nurse for more allergy medication, so when he arrived back on his unit, he had the officer call health care and speak to Defendant Knack.  Defendant Knack refused to give Plaintiff any allergy tablets, stating that Plaintiff could get them from the store.  Plaintiff states that Defendant Knack knew that he was indigent and could not afford the medication.  Plaintiff claims that Defendant Knack retaliated against him for filing a grievance on her.

Plaintiff was seen by the doctor on April 27, 2017, for "serous otitis (fluid in the ear)."  Plaintiff claims that Defendant Knack was responsible for his having to wait almost a month to see the doctor.  On June 1, 2017, Plaintiff was examined by Defendant Stallman in relation to Plaintiff having blood in his urine in April or May of 2017.  During the examination, Defendant Stallman refused to acknowledge Plaintiff's infected prostate, which was bleeding, and told Plaintiff that he could not find anything wrong with him.  Defendant Stallman told Plaintiff that he would give him Cipro again, despite the fact that it had not worked for Plaintiff the last time he

had taken it. Plaintiff asked why his prostate was infected and bleeding and Defendant Stallman became angry and told Plaintiff to leave the exam room.

On June 2, 2017, Plaintiff was told to report to the med-line. When Plaintiff arrived, he was told that he would be on med-line to ensure that he take his Cipro. The med-line is for restricted drugs. Plaintiff states that Cipro is not a restricted medication and that he has never had any problem with Cipro in the past. Plaintiff states that being on med-line would interfere with Plaintiff's ability to attend religious services and that his placement on med-line at the direction of Defendant Knack was retaliatory.

On June 3, 2017, Plaintiff arrived at med-line at 8:30 a.m. and asked Defendant Knack to let him take the antibiotic with him, explaining that he had taken it before and had been allowed to do so in his unit. Defendant Knack refused. When Defendant Knack gave Plaintiff the pill, she released the cup before Plaintiff had it in his hand, so when Plaintiff reached to catch it, his finger brushed very slightly against Defendant Knack's finger. Plaintiff then took the pill and returned to his cell. Later that day, Plaintiff received an assault and battery misconduct and was placed on "non-bond confinement." Plaintiff filed a grievance asserting that he had been lured to med-line so that he could be given a retaliatory misconduct. Plaintiff states that Defendant Knack lied in her responses to the hearing investigator's questions. On June 8, 2017, Defendant O'Brien conducted a hearing on the misconduct, during which she told Plaintiff to convince her that he was not guilty but refused to allow Plaintiff to finish his sentences. Defendant O'Brien constantly interrupted Plaintiff, so Plaintiff raised his voice, prompting Defendant O'Brien to tell Plaintiff that yelling was not good for his case. Defendant O'Brien refused to use the security video that Plaintiff requested. Plaintiff believes that the video showed that he was not guilty of assault. Plaintiff concludes that Defendant O'Brien did not give him a fair and impartial hearing, which

violated Plaintiff's due process rights. Plaintiff also states that the misconduct conviction was retaliatory because Plaintiff had previously filed grievances on Defendant O'Brien and called her a racist. As a result of his misconduct conviction, Plaintiff lost his job. Plaintiff claims that he was transferred to a different facility immediately after his hearing. Plaintiff attempted to request a rehearing, but Unknown Party URF mailroom employee JM returned Plaintiff's request and Plaintiff missed the deadline. Plaintiff remailed the request and explained the reason for the late filing to Defendant Russell, but Russell denied Plaintiff's request.

On June 6, 2017, Plaintiff overslept for evening med-line by fifteen minutes. Officer Depky told Plaintiff that he could go to med-line. Plaintiff arrived at med-line at 7:55 p.m., and Defendant McDowell asked Plaintiff if he had a pass. Plaintiff admitted that he did not, but stated that he had the permission of Officer Depky. Defendant McDowell called Officer Depky, who verified that Plaintiff had permission. Defendant McDowell then stated to Plaintiff, "You assaulted a nurse at the med-line and then filed a grievance on her." Defendant McDowell then wrote a class II misconduct on Plaintiff for being out of place. Defendant Moran reviewed the misconduct with Plaintiff later that evening. Plaintiff filed a grievance regarding the incident. When Plaintiff discussed the issue with Officer Depky, Officer Depky stated "I told Moran that you had permission." Plaintiff never received a hearing on the misconduct, and Plaintiff's grievance was denied at every level by Defendants Anderson, Moran, Maki, and MacLaren.

On February 15, 2017, Defendant Stallman examined Plaintiff and told him that a recent test showed that Plaintiff's kidneys were not functioning properly. Defendant Stallman refused Plaintiff's request to see a specialist. On March 9, 2017, Plaintiff had a blood draw and was told that a kidney test would be performed. No further treatment was given, and Plaintiff filed a grievance. On April 27, 2017, Defendant Stallman examined Plaintiff for an ear infection and

5

gave Plaintiff Cefuroxime Axetil. After completing the antibiotic, Plaintiff's ear pain and hearing became worse.

On May 7, 2017, Plaintiff kited health care to request treatment for a worsening ear infection, as well as a kite about "bumps" on his "private" area. At Plaintiff's May 11, 2017, hearing test, Defendant Eicher told Plaintiff that she never received his kites. Plaintiff showed Defendant Eicher a copy of the kites and she stated, "Oh well, write another one, goodbye." Plaintiff claims that Defendant Stallman had previously told him to come to health care immediately when he noticed bumps on his private area, so that they could see the bumps and prescribe antibiotics. Plaintiff states that he was seen by nursing staff for the bumps / sores on his private area eight days after kiting, at which point the lesions were healing. Plaintiff asserts that Defendant Eicher was aware of Plaintiff's ear infection because Defendant Stallman had prescribed Plaintiff antibiotics to treat the ear infection. Plaintiff claims that the hearing test was held in a loud area, that he did not hear any of the initial beeps in the hearing test, and that he was not even aware that the test had started. However, Defendant Eicher falsified the hearing test results, stating that Plaintiff's hearing was fine.

Plaintiff filed grievances regarding the denial of health care. On May 22, 2017, the step I grievance respondent to KCF-1705-393-12E stated that the results of Plaintiff's hearing test were normal, that the test had taken place in an appropriate setting with the door shut, and that a hearing test for comparison had been scheduled in six months. On June 14, 2017, the step II respondent to grievance KCF-1705-393-12E1 stated that Plaintiff's ears had been examined on May 19, 2017, and were found to be normal. On August 28, 2017, the step I respondent to URF-1708-2569-12D1 stated that Plaintiff's ears were examined and that antibiotic ear drops were provided. *See* ECF No. 1-3, PageID.80-82.

Plaintiff claims that Defendants' conduct violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

7

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially the Court notes that Plaintiff fails to make specific factual allegations against Defendants Maki, Anderson, MacLaren, Peller, Ball, and Lamb, other than his claim that they failed to conduct an investigation in response to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Maki, Anderson, MacLaren, Peller, Ball, and Lamb engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

In addition, Defendant Corizon Health, a private corporation providing health care

services to prison inmates, cannot be held liable under § 1983 on the basis of respondeat superior or vicarious liability. *Rouster v. County of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014); *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). A private contractor is liable under § 1983 only when execution of the private contractor's policy or custom inflicts the alleged injury. *Monell*, 436 U.S. at 694; *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005). To satisfy the *Monell* requirements, "a plaintiff must establish that his or her constitutional rights were violated and that a policy or custom of the [private contractor] was the 'moving force' behind the deprivation of the plaintiff's rights." *Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010). Plaintiff has failed to allege facts showing that he was injured as the result of a policy or custom of Corizon. Therefore, Plaintiff's claim against Corizon Health is properly dismissed.

Plaintiff alleges that Defendant Unknown Party URF mailroom employee JM retaliated against him by returning his request for a rehearing to him, which caused the request to be untimely. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff claims that the only reason that Unknown Party JM could have had in

9

returning Plaintiff's request for rehearing was to make Plaintiff miss the deadline. Although temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

> *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive. In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010). As in *Bergh*, Plaintiff in this case fails to allege facts in support of his assertion that Unknown Party JM was motivated by a desire to retaliate against Plaintiff.

Defendant O'Brien is a hearing officer whose duties are set forth at Mich. Comp. Laws § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* Mich. Comp. Laws § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* Mich. Comp. Laws § 791.252(k). There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts. *See* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*,

849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights). Therefore, Plaintiff's claim against Defendant O'Brien is properly dismissed.

To the extent that Plaintiff is claiming that his misconduct tickets violated his due process rights, the Court will dismiss Plaintiff's due process claims. Plaintiff claims that the various misconducts he received were "false." A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

11

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted of crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011); *Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

12

hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Therefore, Plaintiff's due process claims regarding his misconduct tickets are properly dismissed.

Finally, the Court notes that Plaintiff's retaliation claims against Defendants Knack, Stallman, McDowell, Moran, Eicher, and Weist, and his Eighth Amendment claims against Defendants Knack, Stallman, Eicher, and Weist are not clearly frivolous. Therefore, they are not dismissed on initial screening.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants O'Brien, Maki, Anderson, MacLaren, Peller, Ball, Lamb, Corizon, and Unknown Party JM will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss Plaintiff's due process claims regarding his misconduct tickets on the same basis. The Court will serve the complaint against Knack, Stallman, McDowell, Moran, Eicher, and Weist.

An Order consistent with this Opinion will be entered.


Dated: August 28, 2018                    /s/ Gordon J. Quist
                                                                          GORDON J. QUIST
                                                                UNITED STATES DISTRICT JUDGE