UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALBERT REGINALD ROBINSON #602273,

    Plaintiff,

v.

JESSICA KNACK, et al.,

    Defendants.

_____/

Case No. 2:18-cv-00009

Hon.  Gordon J. Quist
U.S. District Judge

## REPORT AND RECOMMENDATION

### Introduction

This is a civil rights action brought by state prisoner Albert Reginald Robinson pursuant to 42 U.S.C. § 1983. Robinson alleges that the remaining Defendants – Nurse Jessica Knack, Dr. Timothy Stallman, Correctional Officer McDowell, Sergeant Moran, Nurse Dawn Eicher, and Nurse Practitioner Tara Weist – violated his Eighth Amendment and First Amendment rights when he was confined in the Kinross Correctional Facility (KCF).

This Report and Recommendation addresses:

(1) a motion for summary judgment filed by Defendants Tara Weist and Timothy Stallman (ECF No. 49); and

(2)  a motion to dismiss filed by Defendant Moran (ECF No. 27.)[1]

I respectfully recommend that the Court grant the motion for summary judgment filed by Defendants Weist and Stallman, and grant the motion to dismiss

---

[1] Defendants Knack, McDowell, Moran, and Eicher filed a motion for summary judgment.  (ECF No. 62.)   That motion is not addressed in this recommendation.

filed by Defendant Moran. Acceptance of this recommendation will result in the dismissal of Defendants Weist, Stallman, and Moran. The remaining Defendants would then include Knack, McDowell, and Eicher.

## Plaintiff's Remaining Allegations

Robinson's Eighth and First Amendment claims relate to medical care he received in 2016 and 2017. Several of these claims were dismissed in this Court's initial screening opinion. (*See* ECF No. 5, PageID.128 (Opinion).) Robinson's remaining claims are summarized below. First, he alleges that, on November 6, 2016, he asked Defendant Weist to treat sores on his private area. On November 7 or 8, 2016, Defendant Weist told Robinson that a venereal disease test was not approved. Robinson states that he had previously shown his scabs to Defendant Weist, but that because his requests for appointments were not addressed in a timely manner, he was unable to get to health care before the bumps opened, bled, and turned into scabs. Defendant Weist told Robinson that she could not provide treatment without seeing the bumps. Robinson claims that Defendant Weist could have used Robinson's electronic medical record, which documents the different stages of his bumps since 2012, but that Defendant Weist refused to do so in retaliation for Robinson's grievances. Robinson claims that the denial of treatment has caused pain, scarring, and numbness in his private area.

In addition, Robinson says that, on June 1, 2017, he was examined by Defendant Stallman because he had blood in his urine in April or May of 2017. Robinson alleges that, during the examination, Defendant Stallman refused to

2

acknowledge Robinson's infected prostate, which was bleeding, and told Robinson that he could not find anything wrong with him. Robinson alleges that Defendant Stallman told Robinson that he should try Cipro again, although it had not worked previously. Robinson says that he asked Stallman why his prostate was infected and bleeding, which caused Defendant Stallman to become angry. Robinson says that Stallman told him to leave the exam room.

Robinson also alleges that, on February 15, 2017, Defendant Stallman examined him and told him that a recent test showed that Robinson's kidneys were not functioning properly. Robinson alleges that Defendant Stallman refused Robinson's request to see a specialist. On March 9, 2017, Robinson had a blood draw and was told that a kidney test would be performed. Robinson says that no further treatment was given and that he then filed a grievance.

Robinson additionally alleges that, on April 27, 2017, Defendant Stallman examined Robinson for an ear infection and gave Robinson Cefuroxime Axetil. Robinson alleges that, after completing the course of antibiotics, his ear pain and hearing became worse.

Robinson received a misconduct ticket for being out of place on June 6, 2017. Robinson asserts that this misconduct ticket was issued in retaliation for a previous allegedly false misconduct ticket issued against him on June 3, 2017 for assaulting a nurse in the med-line and then for filing a grievance against her. Robinson says that Defendant Moran reviewed the June 6 misconduct ticket with him. Robinson alleges

that the grievance he filed relating to the June 6 misconduct ticket was denied at every level and that Defendant Moran was involved in the denial.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## Eighth Amendment Deliberate Indifference

Defendants Weist and Stallman move for summary judgment based upon the medical record, which, they claim, establishes that they did not act with deliberate indifference and that they provided appropriate medical care and treatment. Robinson disagrees with this assessment of the medical care and treatment that he received.

4

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in

6

an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

1. **Summary of Nurse Practitioner Tara Weist's Treatment of Robinson**

7

Robinson asserts that Defendant Weist failed to provide appropriate treatment for scabs on his penis. The records in this case show that Defendant Weist examined Robinson on October 6, 2016. (ECF No. 49-2, PageID.311-313; ECF No. 49-3, PageID.495-497.) Upon examination there were no scabs present and Robinson stated that they were gone. (*Id.*) Three scabs had been noted by Nurse Practitioner Buchanan during Robinson's previous visit and he was treated with betamethasone. (*Id.*) Defendant Weist informed Robinson that she could not treat him when he was asymptomatic, since there was nothing present to examine or treat. (*Id.*) Defendant Weist ordered a lab test for herpes simplex virus (HSV), but informed Robinson that the test might not be approved if the lab was a nonformulary lab. (*Id.*) The test was never completed because the lab was a nonformulary lab. (ECF No. 49-2, PageID.496.)

On occasion, Defendant Weist treated Robinson for other medical concerns until he was transferred to a different facility on June 8, 2017. (*Id.*) Defendant Weist attests that Robinson never presented to her with scabs or sores on his penis. (*Id.*)

**2. Summary of Dr. Timothy Stallman's Treatment of Robinson**

The records in this case also show that, on February 15, 2017, Defendant Stallman examined Robinson. (*Id.* at PageID.371-373.) Robinson complained of issues concerning his stomach, back, and testicles. (*Id.*) Dr. Stallman noted a history of benign prostatic hyperplasia (BPH) and bilateral hydroceles. (*Id.*) Robinson had been taking Flomax to keep his BPH under control. (*Id.*) Robinson

8

told Defendant Stallman that he had been complaining about testicle pain since 2012. (*Id.*) Defendant Stallman reviewed lab results with Robinson and told him to avoid NSAID's, noting a marginal renal function. (*Id.*) Defendant Stallman further noted that testicular pain may relate to a sliding hernia that could be managed with postural positionings. (*Id.*)

Defendant Stallman attests that, after February of 2017, Robinson's renal function laboratory tests were normal. (ECF No. 49-4, PageID.499.) After Robinson complained of congestion in his ears, ringing, and "rice crispy sounds" on April 27, 2017, Defendant Stallman ordered a hearing test and prescribed the medication Ceftin. (*Id.* and ECF No. 49-2, PageID.429-431.) On May 19, 2017, Defendant Stallman documented the hearing test results, noting that serious otitis was unlikely. (*Id.*, and at PageID.444-446.) Defendant Stallman ordered another hearing test in 6 months for comparison. (*Id.*)

Defendant Stallman also documented a detailed treatment history of Robinson's BPH due to complaints of blood in his underwear and testicular pain. The treatment history included a urology consult, a benign prostate biopsy, and a normal testicular ultrasound. (*Id.*) Defendant Stallman ordered a urinalysis with the intention of requesting an intravenous pyelogram if the urinalysis came back positive, and considered adding the medication finesteride. (*Id.*) Defendant Stallman further noted that Robinson's cramping may be due to pelvic congestion syndrome. (*Id.*)

On June 1, 2017, Robinson presented with complaints of back pain. (*Id*., and at PageID.454-456.) Defendant Stallman suspected the complaints were related to Robinson's prostate issue. (*Id*.) Robinson was argumentative and deferred examination. (*Id*.) Robinson was mostly concerned about his enlarged prostrate and lack of proper treatment. (*Id*.)

The next day, Defendant Stallman reviewed the urinalysis results, which showed an infection. (*Id*. and at PageID.457-58.) Defendant Stallman ordered Cipro to treat the infection and documented a plan to consider an IVP/CT urogram and bladder ultrasound if Cipro was ineffective. (*Id*.) On June 7, 2017, Robinson reported improvement and Defendant Stallman ordered a follow-up urinalysis and prostate-specific antigen test for June 19, 2017. (*Id*., and at PageID.463-466.) That was the last time Defendant Stallman treated Robinson.

## Deliberate Indifference Analysis

In the opinion of the undersigned, Robinson has failed to show that Defendants Weist or Stallman acted with deliberate indifference to his serious medical needs. It is first noted that Robinson received extensive medical care and treatment while he was confined within KCF. Defendants Weist and Stallman provided regular care and several other health care workers at the prison examined and treated Robinson. The medical records show that Robinson was examined or treated weekly and often on multiple days during the same week. (ECF No. 49-2.)

Robinson complained that Defendant Weist should have provided treatment for scabs on his penis even when he was asymptomatic. Robinson alleges that by

10

the time he visited health care, the scabs had already healed, and that Defendant Weist should have provided treatment anyway. This claim makes no sense. First, Defendant Weist was not required to treat scabs that had already healed or an alleged condition that presented as asymptomatic. Second, Robinson's claim that his condition always healed before he could obtain an appointment with healthcare is unpersuasive, considering the numerous times that he visited health care most weeks.

Similarly, a review of Defendant Stallman's treatment of Robinson (summarized above) shows that Stallman provided Robinson with appropriate treatment and follow-up care each time he examined Robinson. Robinson simply argues that the care that he received from Defendants Weist and Stallman was inappropriate and that he disagrees with the medical judgment of his professional providers.

The undersigned finds that Robinson failed to place verifying medical evidence in the record to establish a detrimental effect from the treatment that he received based upon the decisions made by Defendants Weist and Stallman. Furthermore, Robinson has failed to allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. The record establishes only that Robinson disagreed with the medical care that he received at KCF.

In the opinion of the undersigned, Robinson has failed to show that Defendants Weist or Stallman acted with deliberate indifference to Robinson's alleged serious medical needs.

11

## Retaliation

Robinson also argues that Defendants Weist and Stallman failed to provide him with appropriate medical treatment in retaliation for his grievance filings. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id*. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Robinson's retaliation claims against Weist and Stallman are meritless for several reasons. As mentioned, Robinson has failed to allege facts that establish that the medical care he received was inadequate. Thus, in the opinion of the undersigned, Robinson has failed to show that Defendants took any adverse action against him while providing him with medical care. In addition, Robinson has failed to allege facts establishing that Defendants denied him appropriate medical treatment as a result of his grievance filings. In other words, Robinson has failed to show a causal connection between the alleged protected activity – the filing of grievances – and the supposed adverse action.

In the opinion of the undersigned, Robinson has failed to allege facts establishing a genuine issue of material fact relating to his retaliation claims against Defendants Weist and Stallman.

## Defendant Moran's Motion To Dismiss

Defendant Moran moves to dismiss the claim asserted against him under Fed. R. Civ. P. 12(b)(6) based upon the defense of qualified immunity. Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The Supreme Court held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## Qualified Immunity

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional

13

rights of which a reasonable person would have known.'" *Phillips v. Roane County*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Determining whether the government officials in this case are entitled to qualified immunity generally requires two inquiries: "First, viewing the facts in the light most favorable to the plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?" *Id.* at 538-39 (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006).

"A right is 'clearly established' for qualified immunity purposes if 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). The inquiry whether the right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201; *see also Plumhoff v. Rickard*, 572 U.S. 765, 779 (directing courts "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced") (internal quotation marks and citations omitted). Thus, the doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Humphrey*, 482 F.3d at 847 (internal quotation marks omitted).

"The relevant inquiry is whether existing precedent placed the conclusion" that the defendant violated the plaintiff's rights "in these circumstances 'beyond debate.'"

14

*Mullenix v. Luna*, 36 S.Ct. 305, 309 (2015), citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Robinson alleges that, on June 6, 2017, he received a misconduct ticket for being out of place despite having permission from Corrections Officer Depky to go to the med-line. (ECF No. 1, PageID.19.) Robinson asserts that "McDowell called Depky and officer Depky told him I had permission to be there." (*Id.*) Robinson says that Defendant Moran reviewed the misconduct ticket with him. Robinson's complaint states:

> 94. Plaintiff was reviewed for the misconduct at 22:11 (Ten-eleven pm) on June 6, 2017, by Sgt Moran.
>
> 95. Plaintiff explained to Sgt Moran that unit H officer Depky gave him permission to be at med-line late and McDowell wrote the false misconduct anyway.
>
> 96. Sgt Moran finished the Review and I left.

(*Id.* at PageID.20.)

Robinson alleges that Defendant Moran made a false statement by not including in his review of the misconduct ticket that Robinson was given permission to go to the med-line.[2] Robinson alleges that he was never given a misconduct hearing. (*Id.* at PageID.21.) In addition, Robinson alleges that Defendant Moran was involved in denying his Step I grievance on this issue. (*Id.*)

---

[2] Corrections Officer Depky denies that he gave Robinson permission to go to the med-line and further indicates that he informed Defendant Sergeant Moran that he did not give Robinson permission to go to the med-line during Moran's investigation. (ECF No. 63-8, PageID.641.)

Accepting Robinson's allegations as true, Robinson asserts that his constitutional rights were violated by Defendant Moran for reviewing a Class II misconduct ticket with Robinson and responding to his Step I grievance on this issue by finding a lack of merit.  (ECF No. 1-3, PageID.72.)  In both instances, Robinson alleges that Moran provided untruthful information.

The Sixth Circuit held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983.  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  The reason is that there must be active unconstitutional behavior.  Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance.  *Id.*  Also, the Sixth Circuit has held that a prisoner's allegation that a defendant improperly denied a grievance is not a claim of constitutional dimension because there is "no inherent constitutional right to an effective prison grievance procedure."  *Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000).

For these same reasons, Robinson cannot establish that Defendant Moran violated any clearly established right when he (Moran) reviewed a misconduct ticket with Robinson. Robinson alleges that Defendant Moran acted as the reviewer on his misconduct ticket and either did not believe Robinson when he asserted that he was given permission or did not include a statement to that effect after he reviewed the misconduct with Robinson.  Defendant Moran did not write the misconduct ticket.

He simply acted as the reviewer.   Robinson has failed to explain what is involved in reviewing a class II misconduct ticket.   MDOC Policy Directive 03.03.105 (KK-MM) sets forth the supervisory-level staff member's duties in a reviewing a class II misconduct ticket.[3]   A reviewer examines the misconduct ticket to determine if the

---

[3]   The Policy Directive provides:

KK. A supervisory level staff member other than the person who issued the Misconduct Report shall conduct a review of the Class II misconduct violation with the prisoner. The review shall be conducted within 24 hours after the report is written unless there is reasonable cause for delay as determined by the facility hearing officer at the misconduct hearing or as set forth in Paragraph III. The misconduct shall be dismissed by the hearing officer if the report is not reviewed within the required time period and the hearing officer does not determine there was reasonable cause for delay.

LL. The review shall include the following:

1. Examining the Misconduct Report to determine the charge is appropriate and the name and number of the prisoner are correct.

2. Reading the Misconduct Report to the prisoner.

3. Noting on the Misconduct Report the location of any physical evidence.

4. Ensuring the prisoner receives a copy of the Misconduct Report after the review is completed. If the prisoner waives the hearing and pleads guilty; however, the Hearing Investigator shall be responsible for ensuing the prisoner receives the copy after the Hearing Investigator determined the sanction dates.

MM. The reviewing officer shall elevate a Class II misconduct that occurred during or in connection with a visit to a Class I misconduct at the time of review. The reviewing officer may elevate any other Class II misconduct to a Class I misconduct based on the seriousness of the specific facts as stated in the misconduct or the circumstances of the misconduct. The reason for elevation of the charge shall be stated on the Misconduct Report and must include the facts which make it necessary

charge is appropriate, reads the report to the prisoner, notes the location of any physical evidence, and makes sure that the prisoner receives a copy of the report. Defendant Moran wrote in the additional comments sections of the misconduct ticket "no comments," dated and signed the reviewing officer section and indicated that a copy of the misconduct ticket was provided to Robinson.   (ECF No. 1-3, PageID.70.)

In the opinion of the undersigned, Robinson has failed to set forth any conduct by Defendant Moran that violated clearly established law.   Defendant Moran simply acted as the reviewer on a misconduct ticket that Robinson received and responded to a grievance that Robinson had written.   Defendant Moran could not have engaged in any active unconstitutional behavior by simply reviewing a misconduct ticket or by responding to a grievance.   In the opinion of the undersigned, Defendant Moran is entitled to the defense of qualified immunity.

## Recommendation

I respectfully recommend that the Court grant the motion for summary judgment filed by Defendants Weist and Stallman and grant the motion to dismiss filed by Defendant Moran.

---

to elevate to a Class I misconduct what policy has determined is generally to be treated as a Class II misconduct. In other words, it must state why this case differs from other instances of this charge; conclusory phrases such as "necessary for the good order of the facility" are not acceptable as reasons. If elevated to a Class I misconduct, all requirements set forth in this policy for Class I misconducts apply. The Warden shall review all hearing records for Class II misconducts elevated to Class I to monitor this process.

Acceptance of this recommendation will result in the dismissal of Defendants Weist, Stallman, and Moran. The remaining Defendants will include Knack, McDowell, and Eicher.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: August 26, 2019                            /s/ *Maarten Vermaat*
                                                  MAARTEN VERMAAT
                                                  U.S. MAGISTRATE JUDGE