UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALBERT REGINALD ROBINSON #602273,          Case No. 2:18-cv-009

　　　　　Plaintiff,                         Hon.  Gordon J. Quist
                                            U.S. District Judge
　　v.

JESSICA KNACK, et al.,

　　　　　Defendants.
_____/

## **REPORT AND RECOMMENDATION**

### I.  Introduction

This is a civil rights action brought by state prisoner Albert Reginald Robinson pursuant to 42 U.S.C. § 1983.  Robinson alleges that the remaining Defendants – Nurse Jessica Knack, Correctional Officer McDowell, and Nurse Dawn Eicher – violated his Eighth Amendment and First Amendment rights when he was confined in the Kinross Correctional Facility (KCF).

This Report and Recommendation addresses:

(1) a motion for summary judgment filed by the remaining Defendants (ECF No. 62);

(2) Robinson's motion to appoint counsel, for a preliminary injunction and declaratory judgment (ECF No. 79);

(3) Robinson's motion for a preliminary injunction and declaratory judgment (ECF No. 68); and

(4) Robinson's motion to seal the motion requesting injunctive relief (ECF No. 68).   (ECF No. 67.)

I respectfully recommend that the Court grant the motion for summary judgment, deny the motions to appoint counsel, for injunctive and declaratory relief, and to seal, and dismiss this case.

## II.   Factual Allegations

Robinson's First and Eighth Amendment claims relate to medical care that he received in 2016 and 2017.   Several of these claims were dismissed in this Court's initial screening opinion.   (ECF No. 5.)   On September 30, 2019, the Court dismissed Robinson's claims against Defendants nurse practitioner Weist, Correctional Officer Moran, and Dr. Stallman.   (ECF No. 89.)   Robinson alleges that, on March 24, 2017, he missed a 9:15 a.m. health care appointment to pick up his eyeglasses because he had a toothache.   Robinson had a dental appointment at 9:45 a.m. on the same day, and had the dental assistant ask Defendant Knack if he could pick up his eyeglasses.   Robinson says that Defendant Knack told Robinson to schedule a new appointment.   Robinson received a misconduct for missing the appointment.   Robinson claims that the misconduct was written in retaliation for filing grievances and a lawsuit on healthcare workers.

Robinson filed a grievance, which was rejected because it related to a misconduct ticket.   Robinson asserts that, in the past, Defendant Knack had asked the attending officer to call the unit when white inmates were late for, or missed, their appointments.   Robinson received his eyeglasses a few days later at a rescheduled appointment on March 27, 2017.

A few days later, on March 31, 2017, Robinson had a nurse appointment for an infection in his right ear and was given an appointment to see the doctor. Robinson says he forgot to ask the nurse for more allergy medication. So, when he arrived back on his unit, he asked an officer to call health care and speak to Defendant Knack. Robinson says Defendant Knack refused to give Robinson any allergy tablets, and said that Robinson could get them from the store. Robinson says that Defendant Knack knew that he was indigent and could not afford the medication. Robinson claims that Defendant Knack retaliated against him for filing grievances.

At Robinson's May 11, 2017, hearing test, Defendant Eicher told Robinson that she never received his kites for medical care. Robinson showed Defendant Eicher a copy of the kites and she allegedly stated, "[o]h well, write another one, goodbye." Robinson asserts that Defendant Eicher was aware of Robinson's ear infection because he had been prescribed antibiotics to treat the ear infection. Robinson claims that the hearing test was held in a loud area, that he did not hear any of the initial beeps in the hearing test, and that he was not even aware that the test had started. Robinson says that Defendant Eicher falsified the hearing test results, stating that Robinson's hearing was fine.

On June 2, 2017, Robinson was told to report to the med-line. When Robinson arrived, he was told that he would be on med-line to ensure that he take his Cipro. Robinson says that the med-line is for restricted drugs. Robinson says that Cipro is not a restricted medication and that he has never had any problem with Cipro in the past. Robinson says that being on med-line would interfere with his ability to attend

3

religious services and that his placement on med-line at the direction of Defendant Knack was retaliatory.

On June 3, 2017, Robinson arrived at the med-line at 8:30 a.m.   He asked Defendant Knack to let him take the antibiotic back to his cell, explaining that he had been allowed to take this medicine in the past.   Defendant Knack refused this request.   Robinson says that when Defendant Knack gave him the pill cup, she released the cup before Robinson had it in his hand.   Robinson says he reached to catch it and his finger brushed very slightly against Defendant Knack's finger. Robinson then took the pill and returned to his cell.   Later that day, Robinson received an assault and battery misconduct ticket and was placed on "non-bond confinement."   Robinson filed a grievance asserting that he had been lured to the med-line so that he could be given a retaliatory misconduct.

On June 6, 2017, Robinson overslept during the evening med-line by fifteen minutes.   Robinson says that Officer Depky told Robinson that he could go to the med-line. Robinson arrived at the med-line at 7:55 p.m., and Defendant McDowell asked Robinson if he had a pass.   Robinson admitted that he did not, but stated that he had the permission of Officer Depky.   Robinson says that Defendant McDowell called Officer Depky and verified that Robinson had permission to go to the med-line late.   Defendant McDowell then allegedly stated to Robinson, "You assaulted a nurse at the med-line and then filed a grievance on her."   Defendant McDowell then wrote a class II misconduct on Robinson for being out of place. Defendant Moran reviewed the misconduct with Robinson later that evening.

4

### III.   Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV.   Personal Involvement

Robinson alleges that Defendant Eicher administered his hearing test on May 11, 2017, and, at that time, he complained to Eicher that he had not been scheduled for a medical appointment for his ear infection complaint.   Robinson says that Eicher refused to schedule his medical appointment and falsified the hearing test results. Robinson argues that his hearing got worse and, in November of 2018, he was diagnosed as needing a hearing aid in his right ear for the rest of his life.   (ECF No. 83, PageID.916.)   Robinson asserts that the May 2017 test results were falsified to

show that he did not need further treatment. All of Robinson's claims against Eicher relate to treatment she allegedly provided on May 11, 2017.

A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Defendant Eicher filed an affidavit stating that she did not administer Robinson's hearing test and was not involved in Robinson's medical care on May 11, 2017. (ECF No. 63-2, PageID.572.) The medical records also show that Defendant Eicher was not involved in Robinson's care on May 11, 2017, and that she was not the nurse who gave him a hearing test on that date. (*Id.*, PageID.574-5.) The medical records from that day indicate that RN Bethany Stain administered the hearing test and generated the resulting report. (*Id.*)

Robinson does not respond to these claims in his response to the motion for summary judgment. (ECf No. 70.)

Defendant Eicher has shown there is no genuine issue of material fact as to Robinson's claims against her because the evidence before the Court indicates that she was not involved in his treatment that day. In the opinion of the undersigned, Defendant Eicher should be dismissed from this case.

## V. Exhaustion of Administrative Remedies

Defendant Knack argues that Robinson failed to exhaust his retaliation claims regarding the denial of his allergy medication on March 31, 2017, and for making him

obtain his Cipro medication from the med-line in early June of 2017. A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel*, 270 F.3d at 1056 (citing 11 James William Moore, et al., *Moores Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies.   *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001).   A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.   *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.   *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).   "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'"   *Jones*, 549 U.S. at 218-19.   In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."   *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.

Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair

opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court."   *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due.   MDOC Policy Directive 03.02.130 at ¶¶ T, BB.   The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances.   *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF.   The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.   *Id.* at ¶¶ T, FF.   The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director.   *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved."   *Id.* at ¶ S.

---

[1]     In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."   *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130.   *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I.   *Id.*   Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140.   The prisoner will be promptly notified that an extension of time is needed to investigate the grievance.   *Id.*

The Court has considered two grievance filed by Robinson relating to his claims against Defendant Knack.   In grievance **KCF-17-04-0279-12Z**, which is dated April 2, 2017, Robinson asserted that, on March 31, 2017, Defendant Knack told him to purchase allergy medicine at the prison store instead of giving him the tablets upon request.   (ECF No. 63-4, PageID.616.)   The grievance was rejected for containing multiple issues.   (*Id.*, PageID.617.)   However, the Step II grievance was not rejected, but was denied on the merits of Robinson's claims.   (*Id.*, PageID.615.)   The denial stated that Robinson had requested allergy tablets for ear pain.   (*Id.*) Robinson was examined by medical staff and it was determined that his ears were normal.   (*Id.*)   Robinson was told to purchase allergy medicine from the prison store.   (*Id.*)   It was noted that Robinson had a prescription for Tylenol for pain.

(*Id.*)   At Step III, the Step II response was reviewed and upheld, and the grievance appeal was denied.   (*Id.*, PageID.613.) The denial at Step III is dated September 13, 2017.   (*Id.*)

Defendants, citing *Woodford*, 548 U.S. at 94-5, assert that the complaint voiced in this grievance was not exhausted because this lawsuit was filed before the completion of Robinson's Step III appeal.   (ECF No. 63, PageID.554.)   The docket in this case indicates that this lawsuit was filed on January 31, 2018.   Thus, Defendants' argument about the timing of the lawsuit appears to be incorrect.

A review of the record indicates that Robinson did exhaust this claim against Knack.   Robinson's Step I Step I grievance was rejected.   (ECF No. 63-4, PageID.616.)   But, at Step II, the grievance was denied on the merits of the claim asserted by Robinson.   (*Id.* PageID.615.)   The Step III response denied the grievance based upon the Step II response.   (*Id.* PageID.613.)   Robinson's grievance was not rejected at Step II or Step III.   Where the prison rejects a grievance at Step I, or at Step II, but then denies the grievance at the last Step on the merits, the grievance is considered properly filed and exhausted because the last decision addressing the factual basis of the grievance is a denial of the grieved claims and not a procedural rejection.   *Reynolds-Bey v. Harris*, 428 F. App'x 493, 502 (6th Cir. 2011) (applying habeas rules regarding exhaustion to administrative grievances by finding that the final Step III response is equivalent to the decision made by the last state court in a habeas action.)

It is respectfully recommended that the Court find that Robinson exhausted his claim against Defendant Knack involving the alleged denial of allergy medication on March 31, 2017.

On June 3, 2017, Robinson filed grievance **KCF-17-06-0473-28C**. Robinson stated at Step I that Defendant Knack required him to get Cipro medication at the med-line for a two-week period.   (ECF No. 63-4, PageID.610.)   Although Robinson asserted that he did not believe that Defendant Knack ordered the detail, he believes she conspired to inconvenience his religious service in violation of his First Amendment rights.   (*Id.*)   The Step I grievance was rejected for containing multiple issues.   (*Id.*, PageID.611.)   The rejection was upheld at Step II and Step III.   (*Id.*, PageID.607, 609.)   Therefore, Robinson did not properly exhaust his claim against Defendant Knack for requiring him to get his Cipro medication at the med-line in early June of 2017.[2]

Thus, in summary, the undersigned respectfully recommends that the Court find that Robinson (1) exhausted his claim against Defendant Knack involving the alleged denial of allergy medication on March 31, 2017, and (2) failed to exhaust his claim against Knack for requiring him to get Cipro medication at the med-line in early June of 2017 because that claim was rejected at all steps.

## VI.   Retaliatory Misconduct Tickets

---

[2]     Defendant Knack also states that Robinson's physician ordered the restriction at issue here, and that she lacked authority to change that restriction. (ECF No. 63-6, PageID.627.)   This assertion is not contested by Robinson in his response and constitutes another reason to dismiss this claim.

Robinson says that he received several retaliatory misconduct tickets. Robinson was found guilty on each of the misconduct tickets.   There are three misconduct tickets that remain at issue in this case:

(1) Health Service Officer Chappa, who is not a party in this action, issued Robinson a misconduct ticket for being out of place when he missed his March 24, 2017, eyeglass appointment.   Robinson admits that he slept in and missed the appointment.

(2) Defendant Knack issued Robinson an assault and battery misconduct on June 3, 2017, after Robinson forcefully grabbed a cup of his Cipro medicine from her hand.   Robinson denies that he used force and assaulted Defendant Knack.

(3) Defendant McDowell issued Robinson a misconduct ticket for being out of place on June 6, 2017, when Robinson arrived late to the med-line because he overslept and had not received permission to go to the med-line late.   Robinson claims that corrections officer Depky gave him permission to go to the med-line late. Depky denies that he gave Robinson permission.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* "Once the plaintiff has met his burden of establishing that his protected conduct

was a motivating factor behind any harm, the burden of production shifts to the

defendant." *Id.* at 399 (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,

429 U.S. 274 (1977)). "If the defendant can show that he would have taken the same

action in the absence of the protected activity, he is entitled to prevail on summary

judgment." *Id.*

## A. Analysis of First Retaliatory Misconduct Ticket

Health Services Officer Chappa issued Robinson the Class II misconduct ticket

for missing his mandatory Health Services appointment on March 24, 2017.[3]   (ECF

No. 63-6, PageID.630.)   Robinson pled guilty to the misconduct and admitted in his

complaint that he missed his appointment because he overslept. (*Id.*, PageID.631-

632.)   Lt. Bumstead, the hearing officer, found Robinson guilty of this misconduct

and sentenced him to 3 hours of extra duty.   (*Id.*, PageID.631.)   None of the current

or former defendants in this case was involved in issuing Robinson the misconduct

ticket for being out of place after he missed his medical appointment or adjudicating

him guilty.   In addition, Robinson does not allege a conspiracy between the named

defendants and Chappa.   Thus, this misconduct ticket cannot serve as the basis for

a retaliation claim in this case.

---

[3]    Violations of written rules within the MDOC are classified as either Class I,
Class II or Class III Misconducts. Class I consists of the most severe violations, and
Class III consists of the least severe.   While Class I Misconducts are considered
"major" misconducts and are "subject to all hearing requirements set forth in MCL
791.252", Class II and III Misconducts are considered "minor" misconducts and are
"subject to all requirements currently set forth in Department Administrative Rules
and policy directives for 'minor' misconducts."   MDOC Policy Directive (PD)
03.03.103 ¶ B (eff. date 07/01/18).

## B. **Analysis of Second Retaliatory Misconduct Ticket**

Defendant Knack issued a Class I assault and battery misconduct ticket to Robinson on June 3, 2017, for "rapidly swip[ing] his hand from his side, forcefully grabbing the cup and striking my hand.   Inmate Robinson at no time excused himself or apologized for the contact."   (*Id.*, PageID.633.)   After pleading not guilty, Robinson was given a hearing before a hearing officer and found guilty.   (*Id.*, PageID.634.)   Robinson received 10 days of toplock (confinement to quarters) and 30 days loss of privileges.   (*Id.*)

A copy of the associated hearing report and findings is shown below.

**Charge(s)**

**Assault and Battery**

| If Charge Changed by Hearing Officer | Plea |
| --- | --- |
| | ☐ Guilty   ☒ Not Guilty |

| | | |
| --- | --- | --- |
| Misconduct Report Read to and Discussed with Prisoner | ☒ (check if applies) | No Hearing Investigation Requested |
| Hearing Investigation Read to and Discussed with Prisoner | ☒ (check if applies) | ☐ (check if applies) |

**EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT REPORT**

Unless otherwise noted all documents are one page. The prisoner is present and the misconduct report is reviewed with him along with his statement that she let go of the cup and he had to rush to grab it and may have brushed her hand but itw as accidental, Non Bond Toplock Form, 6-2-17 grievance saying he wants off restricted med lines and have keep on person medications, 4-2-17 Rejected Grievance that the Nurse would not issue him additional allergy medication, Nurse Knack's statement (2 pg) the contact was not accidental as he never apologized or sais excuse me, she had no knowledge of any grievances as they are addressed by the nursing supervisor and she did it with enough force that she was afraid the pill would fall out of the cup, and Memo regarding the Unavailability of the Video that is found to be confidential for the security of the facility. Prisoner Robinson states that he went to medication window, he showed his id, she handed him the cup and right before he grabbed it she let go of it and he had to grab it quickly and brushed her hand and he did not apologize because she did not apologize to him. He then presents a blister pack which was issued 6-2-17 that he states is for the same pills and detail for medlines issued 6-2-17 for medlines for him and states that this proves the nurse lured him there to see if anything would happen to set him up because he already was given these pills as keep on person so he had no reason to be

**REASONS FOR FINDINGS**

sent to medication lines. He was informed that if he wanted the detail as evidence it would be attached to the report and he would be able to keep the pills he said he wanted it as evidence and he wanted it back and it was explained he would have to kite for a copy of the packet. Prisoner has nothing further to add. No further evidence is requested or is needed. Prisoner is informed of the findings, sanctions and sanction dates and told that he will receive the report. REASONS FOR FINDINGS: Prisoner Robinson grabbed a medication cup out of Nurse Knack's hand hitting her hand in the process on 6-3-17 at 0840 hrs. I find that this was clearly an intentional unconsented to touching of Knack's hand because he clearly would have apologized or said excuse me if he had not intended to touch her and the touching served no other purpose except to abuse the nurse since he was clearly upset with her by the fact that he kept grieving her and he could have easily taken t he cup without touching her. Prisoner Robinson's statement that he was lured there by the nurse because he was already given the pills to keep on person and should not have been on medication line call out is not believed because if he was already issued the pills he had no reason to grab the cup with the pill touching the nurse as he already had them according to his statement and should have just refused if that was the case so the only reason he had to grab at the cup was to assault the nurse. The

**PROPERTY DISPOSITION (for contraband see PD.04.07.112)**

Officer is clear and factual in his statement and is found to be credible. The charge is upheld.

**FINDINGS**

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| Charge No. 1 | ☒ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | 008 |
| Charge No. 2 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | _____ |
| Charge No. 3 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | _____ |
| Charge No. 4 | ☐ Guilty | ☐ Not Guilty | ☐ Dismissed | Reporting Code | _____ |

**DISPOSITION (select one or more) (Toplock & LOP Sanctions End at 6:00 am)**

| | | Begins | Ends | | |
| --- | --- | --- | --- | --- | --- |
| 10 | Days of Detention | 06/08/2017 | 06/18/2017 | | Days Credit |
| ___ | Days Top Lock | | | | Hours Extra Duty |
| 30 | Days Loss of Privileges | 06/08/2017 | 07/08/2017 | $ | Restitution |

*(Id.,* PageID.634.)

As reflected in the report, Robinson arguably asserted to the hearing officer that Knack was retaliating against him. The hearing officer, however, found that Knack was credible and found Robinson guilty. (*Id.*)

The question before the Court is whether the hearing officer's factual findings are entitled to preclusive effect. A prisoner's claim that he was falsely accused of a

major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). However, as the Sixth Circuit subsequently qualified in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), not every factual finding is entitled to preclusive effect. Instead,

> the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. [*Peterson*, 714 F.3d] at 916-17. It likewise turns on the court's "sense of justice and equity," *Blonder-Tongue Labs., v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971), which may require a case-by-case analysis of surrounding circumstances.

*Roberson*, 770 F.3d at 404-05.

In *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018), the Sixth Circuit further clarified the limitations of the preclusion doctrine, as follows:

> To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts." *Peterson v. Johnson*, 714 F.3d 905, 911-13 (6th Cir. 2013) (internal citation and quotation marks omitted).

In *Peterson*, the Court considered, as a matter of first impression, whether a hearing officer's factual determination at a Michigan *major* misconduct hearing has preclusive effect in litigation brought by a prisoner under § 1983. *Id*. at 908, 911. The Court concluded that, because all four requirements were met, the "hearing officer's *factual* finding that [the prisoner] was the one who grabbed [the officer's] hand

- 18 -

precludes a contrary finding in federal court." *Id*. at 917. In *Roberson v. Torres*, the Court considered the same issue, and identified the four requirements listed above. 770 F.3d 398, 403-04 (6th Cir. 2014). The Court said that *Peterson* does not mean that "any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect." *Id*. at 404. "*Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing." *Id*.

> Indeed, the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. It likewise turns on the court's sense of justice and equity, which may require a case-by-case analysis of surrounding circumstances.

*Id*. at 404-05 (internal citations and quotation marks omitted). The Court declined to decide the preclusion question, and remanded the case to the district court to consider the argument for the first time. *Id*. at 405. The Court instructed the district court to "give particular attention to the fairness and accuracy of the factual findings made by the major-misconduct hearing officer." *Id*. The Court advised that "[n]umerous inquiries may be relevant to the district court's analysis," like "why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either [the prisoner] or [the officer]." *Id*. at 405.

*Maben*, 887 F. 3d at 259.

The *Maben* court expressly rejected the application of *Peterson / Roberson* preclusion to minor misconduct proceedings in Michigan, both because the state agency was not acting in a judicial capacity and because the prisoner in such proceedings does not have an adequate opportunity to litigate the factual dispute. *Id*. at 261.

A review of the Class I misconduct proceeding shows that each of the factors

set forth in *Peterson* and *Maben* was met, thus leading to the conclusion that the hearing officer's decision has preclusive effect.   First, the prison conducted the hearing in a judicial capacity.   Second, the dispute issue was properly before the hearing officer.   Indeed, in order to find Robinson guilty, the hearing officer had to conclude that Knack's version of events was true and that Robinson's version was not. Third, Robinson had an opportunity to litigate this issue.   He was read the misconduct ticket and was confronted with the evidence against him.   Robinson had the chance to present evidence and argument to the hearing officer.   Robinson also had the opportunity to appeal the finding.[4]   In the opinion of the undersigned, the Court should give preclusive effect to the hearing officer's decision and dismiss Robinson's retaliation claim against Defendant Knack on the assault and battery misconduct ticket.

### C. Analysis of Third Retaliatory Misconduct Ticket

Defendant McDowell issued Robinson a Class II misconduct ticket for being out of place on June 6, 2017.   (ECF No. 1-3, PageID.70.[5])   In a grievance Robinson filed in relation to this ticket, he admitted that he overslept and arrived late to the med-line.   (*Id*. PageID.71.) Robinson claims that he had permission from Correctional Officer Depky to arrive late.   (*Id*.)   Correctional Officer Depky, however, denies that he gave Robinson permission to go the med-line after Robinson

---

[4]    Robinson's request for a rehearing was returned because he submitted it too late.   (ECF No. 1-3, PageID.69, 93.)

[5]    The Court has received a copy of the misconduct ticket in this matter, but not a copy of the hearing report and findings of the hearing officer.

overslept on June 6, 2017. (ECF No. 63-8, PageID.641.) Depky stated that he told Defendant McDowell over the telephone that Robinson was *not* given permission to go the med-line. (*Id.*)

Defendants argue that Robinson has failed to offer any proof, other than conclusory statements, to show a causal connection between some protected conduct by Robinson and the adverse action at issue here, i.e. the misconduct ticket written by McDowell. (ECF No. 63, PageID.559-60.) Proof of a causal connection is required. *See Thaddeus-X*, 175 F.3d at 394 (setting forth elements of retaliation claim).

Robinson's complaint asserts that McDowell made statements indicating that he was writing a misconduct ticket against Robinson because Robinson had assaulted a nurse and then written a grievance on her. (ECF No. 1, PageID.20.) Robinson's response to Defendants' motion for summary judgment fails to address this issue. Thus, Robinson's only offer of proof on this issue is found in his complaint.

The first question the Court must consider is whether Robinson's complaint constitutes an affidavit or declaration that would satisfy the requirements of Fed. R. Civ. P. 56(c)(4). The Court recognizes that "[i]n recent years, many prisoners have filed "verified" complaints to avoid dismissal on summary judgment." *Sanford v. Mullins*, No. 1:16-CV-1431, 2019 WL 5006034, at *4 (W.D. Mich. Sept. 23, 2019), *report and recommendation adopted,* No. 1:16-CV-1431, 2019 WL 4986101 (W.D. Mich. Oct. 8, 2019) (declining to rely upon unsworn, so-called "verified" complaint for purposes of summary judgment because "homespun" declaration failed to meet the

requirements of 28 U.S.C. § 1746).   Here, the "verification" on the last page
Robinson's complaint states that it is sworn under penalty of perjury.   (ECF No. 1,
PageID.41.)   Although the complaint is not notarized, it is likely sufficient for
purposes of ruling on Defendants' motion for summary judgment.   And the
statements Robinson alleges were made by McDowell are sufficient to establish a
genuine issue of material fact as to causal connection.

In the opinion of the undersigned, Robinson's claim against McDowell should,
nevertheless, be dismissed.   As noted in *Thaddeus-X*, 175 F.3d at 394, "[i]f the
defendant can show that he would have taken the same action in the absence of the
protected activity, he is entitled to prevail on summary judgment."   Thus, a
defendant facing a retaliation claim has what amounts to an affirmative defense at
the summary judgment stage.   Here, McDowell offers an explanation that appears
to qualify.   In his affidavit, he states the following:

> 5.   I issued Robinson a misconduct violation for Out of Place because he
> was required by his detail to be at the medication window between 1900-1940 hours
> but didn't arrive until 1955 hours.   I called Robinson's housing unit to verify
> whether staff had given him authorization to go late, but none had been given.   I did
> not conspire with anyone, nor did I issue the misconduct violation in retaliation for
> filing a grievance.   I would have taken the same action with any prisoner,
> regardless of any grievance or any other factor.

(ECF No. 63-7, PageID.637.)

Thus, McDowell asserts that he would have written the misconduct on
Robinson regardless of any grievance or any other factor.   Robinson offers nothing to

counter this claim.   Robinson could argue (but has not done so) that McDowell's affirmative defense is based on the truth of Correctional Officer Depky's statement, and, as a result, a genuine issue of material fact remains.   The undersigned is not required to mine the case to find genuine issues of material fact.   Here, McDowell has asserted facts that, if true, would satisfy the affirmative defense set forth in *Thaddeus-X*.   Depky, who is not a defendant here, offers facts that corroborate and support McDowell's account.   The undersigned can only find a genuine issue of material fact by inferring arguments that Robinson might have made.   The Court is not required to go these lengths to deny a motion for summary judgment. Accordingly, the undersigned respectfully recommends that the retaliation claim against Defendant McDowell be dismissed.

## VII.   Eighth Amendment Medical Claims

Robinson claims that Defendant Knack failed to provide him with appropriate treatment for his ear infection and forced him to obtain his Cipro medication from the med-line instead of allowing him to keep the medication on his person.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.   U.S. Const. amend. VIII.   The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency.   *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent

to the serious medical needs of a prisoner.   *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component.   *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).   To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.   *Id.*   In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.   *Id.*   The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004).   If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care."   *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).   Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."   *Id.*   Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second

guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

For purposes of this motion, Defendant Knack concedes that Robinson's ear condition presented a serious medical need. Defendant Knack argues that Robinson cannot show that she acted with deliberate indifference toward his medical needs. Defendant Knack states that, as a registered nurse, she is responsible for treating chronic, acute, surgical, and medical needs of prisoners. (ECF No. 63-6, PageID.625.) She does not diagnosis medical conditions.[6] (*Id.*)

---

[6] As previously stated, Robinson failed to exhaust his claim that Defendant Knack required him to get Cipro medication from the med-line. Even if he had exhausted that claim, Robinson cannot support a violation of the Eighth Amendment

Robinson complains that Defendant Knack failed to properly diagnose his ear condition.   Robinson has received extensive medical care and treatment at the prison.   The medical records show that Robinson ears were checked repeatedly in 2017, by health care staff.   In the opinion of the undersigned, Robinson cannot establish that Defendant Knack acted with deliberate indifference to any serious medical condition.   This is true even if Defendant Knack made a mistake in failing to properly treat Robinson's ear condition.

After Robinson complained of right ear pain on February 3, 2017, he was examined by health care staff.   (ECF No. 49-2, PageID.361.)   He was assessed as having an earache with "[p]otential for altered sensory perception."   (*Id.*, PageID.362, 393.)   He was informed to call health care if his symptoms became more severe.   (*Id.*)

On February 22, 2017, Robinson was scheduled for an appointment with health care after he complained of ear pain. (*Id.*, PageID.376.)   Robinson was examined for multiple medical concerns on March 2, 2017.   (*Id.*, PageID.377-390.)

Robinson's ears were checked on March 22, 2017, and a recheck was scheduled. (*Id.*, PageID.398-400.)   Robinson was taking Tylenol for pain.   (*Id.*, PageID.400.) His pain medication was increased and he was instructed to refrain from Q-tip use. (*Id.*)

---

by the requirement to obtain his Cipro medication from the med-line.   In addition, Defendant Knack further states that she did not order Robinson to get his Cipro medication from the med-line.   (ECF No. 63-6, PageID.627.)   That was ordered by the physician and she was not authorized to override that decision.   (*Id.*)

Defendant Knack examined Robinson for complaints of back and knee pain on March 23, 2017.   (*Id.*, PageID.401.)   Robinson was examined for complaints of an ear infection on March 31, 2017.   (*Id.*, PageID.409.)   There was no indication that Robinson had any infection.   (*Id.*, PageID.410.)

On April 27, 2017, after Robinson complained of congestion in his ears, ringing, and "rice crispy sounds", Dr. Stallman ordered a hearing test and prescribed the medication Ceftin.   (*Id.* and ECF No. 49-2, PageID.429-431.)   On May 19, 2017, Dr. Stallman documented the hearing test results, noting that serous otitis was unlikely. (*Id.*, and at PageID.444-446.)   Dr. Stallman ordered another hearing test in 6 months for comparison.   (*Id.*)

In the opinion of the undersigned, Robinson has failed to establish that Defendant Knack acted with deliberate indifference to Robinson's complaints of ear pain.   Defendant Knack, other nurses, and other health care providers examined Robinson for complaints regarding his ears and treated him for ear pain.   Robinson has failed to place verifying medical evidence into the record to establish any detrimental effect from the treatment that he received based upon decisions made by Defendant Knack.   The record establishes only that Robinson disagreed with the treatment that he received.   In the opinion of the undersigned, Robinson has failed to show that Defendant Knack acted with deliberate indifference.

## VIII.   Qualified Immunity

Robinson argues that on March 31, 2017, Defendant Knack retaliated against him when she told him to purchase allergy medicine from the prison store. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.   *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).   "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."   *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct.   *Id.* at 232-233.   If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted.   The court may consider either approach without regard to sequence. *Id.*

- 29 -

Robinson says that Defendant Knack retaliated against him when she told him that he could purchase allergy medication at the prison store.   Robinson says that Defendant Knack could have given him allergy medication.   In the opinion of the undersigned, Robinson has failed to show that Defendant Knack's statement was motivated by a desire to retaliate against him or that the statement rose to the level of adverse action.   *Thaddeus-X,* 175 F.3d at 394.   Robinson fails to allege facts showing a causal connection between the statement and his grievance filings.   *Id.*

Moreover, Defendant Knack did not have authority to prescribe Robinson allergy medication.   Defendant Knack checked Robinson's ears on March 22, 2017, and March 31, 2017.   (ECF No. 63-6, PageID.626.)   Defendant Knack determined that there was no infection in Robinson's ears.   (*Id.*)   Robinson was not prescribed with allergy medication by the physician who examined him.   (*Id.*, PageID.627.)   As an RN, Defendant Knack does not diagnose medical conditions, but administers medication and treatment as ordered by medical staff.   (*Id.*, at PageID.625.)   Since the physician did not prescribe allergy medication for Robinson, Defendant Knack did not have authority to provide that medication to Robinson.   Informing Robinson that he could purchase the over-the-counter medication from the prison store was not a retaliatory act.   In the opinion of the undersigned, Defendant Knack is entitled to the defense of qualified immunity on Robinson's claim that she retaliated against him when she informed him that he could purchase allergy medication at the prison store.

## IX.   Motion For Preliminary Injunction and Declaratory Relief

Robinson says that he is being denied access to the Courts.   Robinson argues that he is not able to effectively litigate because he is limited to only 5 sheets of paper per week and he needs 50 sheets of paper per week.   As a result, Robinson requests appointment of counsel.   Robinson also moves for injunctive relief against librarians Trowbridge and Foster.   Neither of these individuals, as Robinson recognizes, are defendants in this case.   Robinson makes a number of complaints against these individuals.   Those include being denied envelopes, paper, carbon paper, speaking with the wrong tone, using racial slurs, asking for too much information when he requests photocopies, and taking too much time to make photocopies.   In addition, Robinson requests that the court seal his motion to prevent retaliation against him.

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies." *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).

In exercising that discretion, a court must consider whether Robinson has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction.   *Id.*   These factors are not prerequisites to

the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *Ne. Ohio Coal.*, 467 F.3d at 1009. Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *Glover v. Johnson*, 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).

In the opinion, of the undersigned, for the reasons previously stated, Robinson has failed to show a likelihood of success on the merits of his underlying claims. In addition, Robinson has failed to show that he is being denied access to the courts. In order to state a viable claim for interference with his access to the courts, Robinson must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). In other words, Robinson must demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53. Robinson has failed to make that showing.

Moreover, requests injunctive relief that are unrelated to the underlying action are not appropriate. *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction appropriate to grant relief of "the same character as that which may be granted finally," but inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit.")   Robinson requests injunctive relief against individuals who are not parties to this action.

In addition, Robinson has not shown that he needs representation of counsel. Indigent parties in civil cases have no constitutional right to a court-appointed attorney.   *Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F2d 601, 604-05 (6th Cir. 1993).   Appointment of counsel is a privilege that is justified only in exceptional circumstances.   In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Robinson's apparent ability to prosecute the action without the help of counsel.   *Lavado*, 992 F.2d at 606. In the opinion of the undersigned, Robinson has proven that he can represent his interests in this matter.

In the opinion of the undersigned, Robinson's request for injunctive relief and for appointment of counsel (ECF No. 79), and to seal his motion[7] (ECF No. 67) should be denied.

---

[7]   "Judicial records are presumptively open to the public. The strong presumption of public access to court materials fosters confidence in the judicial system by assuring that courts are operating fairly and in a transparent fashion and that disputes presented to the courts are open to public scrutiny." *Martis v. Dish Network*, No. 1:13-cv-1106, 2013 WL 6002208, at * 1 (W.D. Mich. Nov. 12, 2013) (citing *Nixon*

## X. Recommendation

I respectfully recommend that the Court grant the motion for summary judgment (ECF No. 62) filed by Defendants Knack, McDowell, and Eicher.

It is further recommended that the Court deny Robinson's motions for injunctive relief, for appointment of counsel, and to seal.   (ECF No. 67, 68, and 79.)

If the Court accepts this recommendation, the case will be dismissed.

NOTICE TO PARTIES:   Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).   Failure to file timely objections constitutes a waiver of any further right to appeal.   *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).   *See also Thomas v. Arn*, 474 U.S. 140 (1985).


Dated:   December 27, 2019               /s/ *Maarten Vermaat*
                                         MAARTEN VERMAAT
                                         U.S. MAGISTRATE JUDGE


---

*v. Warner Commc'ns*, 435 U.S. 589, 597 (1978); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1177-79 (6th Cir. 1983)).